UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 9:25-cv-80137

| | |
|---|---|
| STS REFILL TECHNOLOGY, LLC, and COLDESI, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SCRIBE OPCO, INC., <br><br> Defendant. | **JURY TRIAL DEMANDED** |

**COMPLAINT FOR DECLARATORY JUDGMENT OF NONINFRINGEMENT OF PATENTS AND VIOLATIONS OF FLORIDA'S PATENT TROLL PREVENTION ACT**

Plaintiffs STS Refill Technology, LLC ("STS") and ColDesi, Inc. ("ColDesi") (collectively, "Plaintiffs"), for their Complaint for Declaratory Relief against Defendant Scribe Opco, Inc. ("Defendant" or "Scribe Opco"), allege as follows:

**NATURE OF THE ACTION**

1. This action arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, the Patent Act, 35 U.S.C. § 1 *et seq.*, and Florida's Patent Troll Prevention Act, §§ 501.991 – 501.997, Florida Statutes. Specifically, Plaintiffs seek declarations of noninfringement of U.S. Patent Nos. 12,077,010 ("010 patent") and 12,128,699 ("699 patent") (collectively, the "Scribe Patents"). Plaintiffs seek further relief under Florida state law for Defendant's bad faith assertion of the Scribe Patents. Copies of the 010 and 699 patents are attached as Exhibits A and B hereto, respectively.

**THE PARTIES**

2. Plaintiff STS is a limited liability company organized and existing under the laws

1

of the State of Florida, having a principal place of business at 8300 Congress Ave., Boca Raton, Florida 33487, and doing business in this State and District.

3. Plaintiff ColDesi is a corporation organized and existing under the laws of the State of Florida, having a principal place of business at 4537 South Dale Mabry Highway, Tampa, Florida 33611, and doing business in this State and District.

4. Upon information and belief, Defendant Scribe Opco is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 14421 Myerlake Circle, Clearwater, Florida 33760.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the claims pled herein pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

6. This Court may declare the rights and other legal relations of the parties in this case under 28 U.S.C. § 2201, and Federal Rule of Civil Procedure 57, because, as alleged in greater detail below, an actual and justiciable controversy exists concerning the rights of, and legal relations between, Plaintiffs and Defendant. Under 28 U.S.C. § 2202, this Court may grant "[f]urther necessary or proper relief based on a declaratory judgment or decree, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

7. This Court has general personal jurisdiction over Defendant consistent with the principles underlying the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Florida's long-arm statute, Section 48.193(2), Florida Statutes. In this regard, Defendant's principal place of business is in Florida. Further, on information and belief, Defendant maintains continuous and systematic general business contacts throughout the State of Florida,

including in this District. Finally, this Court may also exercise specific jurisdiction over Defendant because, as discussed below, it sent a cease and desist letter to STS in this District, and directed its bad faith assertion of patent infringement at STS in this District.

8. Venue is proper in this Court under the provisions of 28 U.S.C. § 1391 because, among other things, Defendant is subject to personal jurisdiction in this District, and because a substantial part of the events giving rise to Plaintiffs claims occurred in this District.

## BACKGROUND FACTS COMMON TO ALL COUNTS FOR RELIEF

9. Each of Plaintiffs is in the business of, among other things, providing direct-to-film ("DTF") printers. Generally, a DTF printer is used to print a graphic onto a piece of film with various colored inks. In turn, the graphic is applied (or transferred) to a "substrate," which substrate can be any of a variety of materials, including fabrics, plastics, wood, metal, and ceramics. One of several popular uses of DTF printing is custom apparel decorating.

10. Neither Plaintiff is in the business of creating, decorating, or selling custom apparel or other items bearing graphics printed on a DTF printer.

11. On or about December 20, 2024, Defendant sent a letter directed to Plaintiff STS alleging Defendant's ownership of the 010 and 699 patents and accusing Plaintiff of "offering for sale, selling, and distributing direct-to-film printing equipment, which produces an applicator for transferring indicia to a substrate, that may infringe the Scribe Patents." (Ex. C hereto, J. Miller letter to STS (the "STS Notice Letter").) The STS Notice Letter specifically identifies the following models of STS DTF printers: STS 24" XPD-924D DTF; STS 64" XPJ-1682D DTF; and STS XPD-724 DTF. (*Id.*) The STS Notice Letter further alleges that STS "may also be [sic] induc[]ing and/or contributing to the infringement of the Scribe Patents." (*Id.*) The STS Notice Letter makes a list of specific demands of STS, including, among others, that STS (1) "cease and

desist from manufacturing, selling, offering for sale, distributing, and/or importing the DTF Printers" and (2) "agree in writing that neither STS [] nor an entity acting on behalf of or in connection with STS [] will [sic] directly or indirectly engage in infringement of Scribe's intellectual property[.]" (*Id.*) Defendant did not include a patent claim chart or other patent infringement analysis with the STS Notice Letter.

12. On or about December 20, 2024, Defendant sent a letter directed to Plaintiff ColDesi alleging Defendant's ownership of the 010 and 699 patents and accusing Plaintiff of "offering for sale, selling, and distributing direct-to-film printing equipment, which produces an applicator for transferring indicia to a substrate, that may infringe the Scribe Patents." (Ex. D hereto, J. Miller letter to S. Colman (the "ColDesi Notice Letter").) The ColDesi Notice Letter is almost identical to the STS Notice Letter in form and substance. (*Id.*) The ColDesi Notice Letter specifically identifies the following models of DTF printers provided by ColDesi: Roland VersaSTUDIO BY-20; DTF-12HT; DTF-24HT; and DTF-24H4. (*Id.*) The ColDesi Notice Letter further alleges that ColDesi "may also be [sic] induc[]ing and/or contributing to the infringement of the Scribe Patents." (*Id.*) The ColDesi Notice Letter makes a list of specific demands of ColDesi, including, among others, that ColDesi (1) "cease and desist from manufacturing, selling, offering for sale, distributing, and/or importing the DTF Printers" and (2) "agree in writing that neither ColDesi nor an entity acting on behalf of or in connection with ColDesi will [sic] directly or indirectly engage in infringement of Scribe's intellectual property[.]" (*Id.*) Defendant did not include a patent claim chart or other patent infringement analysis with the ColDesi Notice Letter.

13. In each of the STS Notice Letter and the ColDesi Notice Letter, Defendant alleged that it "owns … all rights to" the Scribe Patents. (Ex. C at 1; Ex. D at 1.)

14. Notwithstanding Defendant's assertion that it owns all rights to the Scribe Patents,

4

on or about May 31, 2023, Defendant executed an assignment in favor of a third party, which assignment granted to the third party

> a continuing security interest in all right, title and interest of [Defendant] in, to and under the Patents and the applications and the registrations thereof, and all proceeds thereof, including, without limitation, any and all causes of action which may exist by reason of infringement thereof and any and all damages arising from past, present and future violations thereof (the "Collateral")….

(Ex. E hereto, Patent Assignment executed 5/31/2023 ("the 2023 Assignment").) Defendant recorded the 2023 Assignment with the U.S. Patent and Trademark Office ("PTO"). (*Id.*) Since Defendant recorded the 2023 Assignment, there have been no subsequent filings or recordations with the PTO indicating that the 2023 Assignment has been terminated.

15. Each of the STS Notice Letter and the ColDesi Notice Letter identifies Scribe Opco, Inc. as the alleged owner of all right to the Scribe Patents. Neither letter includes an address for Scribe.

16. Since sending the STS Notice Letter and the ColDesi Notice Letter, Defendant has not withdrawn its allegations that each Plaintiff is infringing the 010 and 699 patents.

17. Plaintiffs are in doubt as to their rights and liabilities with respect to the 010 and 699 patents and there is, therefore, a genuine dispute between the parties as to whether Plaintiffs have infringed the Scribe Patents.

18. There is an actual, substantial, and justiciable controversy between Plaintiffs and Defendant of sufficient immediacy and reality to warrant the rendering of a declaratory judgment by this Court. Defendant has made threats to Plaintiffs' businesses by accusing Plaintiffs of unlawful actions and requesting that Plaintiffs immediately cease from certain business activities.

19. Plaintiffs are entitled to a judgment declaring their rights as requested herein.

20. As alleged in greater detail below, Plaintiffs do not currently make, use, sell, offer

for sale, or import, and have never made, used, sold, offered for sale, or imported, DTF printers that include each and every recited element of any apparatus claim of the 010 patent or that perform each and every recited element of any process or method claim of the 699 patent. Therefore, Plaintiffs do not infringe any claim of the 010 or 699 patents and are entitled to a declaratory judgment confirming the same.

## COUNT I
### (Declaratory Judgment of Noninfringement of the 010 Patent)

21. Plaintiffs incorporate by reference paragraphs 1-20 above as if set forth fully herein.

22. Plaintiffs have not infringed and are not now infringing any claim of the 010 patent as asserted by Defendant in the STS Notice Letter and the ColDesi Notice Letter. In particular, and by way of one example but not limitation, none of the DTF printers identified in Defendant's notice letters, and no other product made, used, sold, offered for sale, or imported by either Plaintiff, is "an applicator for transferring an indicia to a substrate" as recited in independent claims 1 and 13 and, necessarily, dependent claims 2-12 and 14-20 of the 010 patent.

23. By way of further example but not limitation, none of the DTF printers identified in Defendant's notice letters itself embodies, includes, creates, or can create "an adhesive layer disposed on the white layer, the adhesive layer configured to adhere the ink layer and the white layer to the substrate" as recited in independent claims 1 and 13 and, necessarily, dependent claims 2-12 and 14-20 of the 010 patent.

24. By way of further example but not limitation, none of the DTF printers identified in Defendant's notice letters itself embodies, includes, creates, or can create "a release layer disposed between the carrier film and the ink layer" as recited in independent claims 1 and 13 and, necessarily, dependent claims 2-12 and 14-20 of the 010 patent.

25. For the foregoing reasons, and other reasons that will be revealed through the course of discovery in this case, Plaintiffs are entitled to a declaratory judgment that they do not infringe any claim of the 010 patent.

## COUNT II
### (Declaratory Judgment of Noninfringement of the 699 Patent)

26. Plaintiffs incorporate by reference paragraphs 1-25 above as if set forth fully herein.

27. Plaintiffs have not infringed and are not now infringing any claim of the 699 patent as asserted by Defendant in the STS Notice Letter and the ColDesi Notice Letter. In particular, and by way of one example but not limitation, none of the DTF printers identified in Defendant's notice letters, and no other product made, used, sold, offered for sale, or imported by either Plaintiff, performs or facilitates a "process of transferring an indicia to a substrate comprising[,]" in relevant part, a "carrier film including a first layer, a second layer, and a third layer, [wherein] the first layer is a planar sheet of material [and] the *second layer* disposed between the first layer and the *second layer*" as recited in independent claim 1 and, necessarily, dependent claims 2-6 of the 699 patent.

28. By way of further example but not limitation, none of the DTF printers identified in Defendant's notice letters performs or facilitates a "process of transferring an indicia to a substrate comprising[,]" in relevant part, the steps of "selectively curing [a] nonwhite color ink" with "a first heating element[,]" then "printing a white color ink to the [selectively cured color] ink layer to form a white layer having a white color ink contour substantially equal to a nonwhite color ink contour of the nonwhite color ink" with a "second print head[,]" then "disposing an adhesive layer on the [uncured] white layer[,]"as recited in independent claim 1 and, necessarily, dependent claims 2-6 of the 699 patent.

29. By way of further example but not limitation, none of the DTF printers identified in Defendant's notice letters performs or facilitates "a method of transferring an indicia to a substrate comprising[,]" in relevant part, "the steps of "curing [nonwhite] ink with a first heating element[,]" then "transferring [liquid or semi-liquid] white ink to [the cured nonwhite ink layer] to form a white layer[,] then "dispensing a[] [powder] adhesive layer on the [liquid or semi-liquid] white ink[,]" then "curing the adhesive layer with a second heating element[,]"as recited in independent claim 7 and, necessarily, dependent claims 8-12 of the 699 patent.

30. By way of further example but not limitation, none of the DTF printers identified in Defendant's notice letters performs or facilitates "process of transferring an indicia to a substrate comprising[,]" in relevant part, which process uses a "carousel printing machine" configuration as recited in independent claim 13 of the 699 patent.

31. For the foregoing reasons, and other reasons that will be revealed through the course of discovery in this case, Plaintiffs are entitled to a declaratory judgment that they do not infringe any claim of the 699 patent.

### COUNT III
### (Bad Faith Assertion of the Scribe Patents)

32. Plaintiff incorporates by reference paragraphs 1-31 as if set forth fully herein.

33. As discussed above, as of the time Defendant sent the STS Notice Letter and the ColDesi Notice Letter, Defendant did not itself own all right, title, and interest in and to the Scribe Patent but had instead previously assigned a continuing security interest in all such rights to a third party. (¶ 14, *supra*; Ex. E, the 2023 Assignment.) Notwithstanding the foregoing, Defendant incorrectly represented to Plaintiffs in the notice letters that Defendant "owns … all rights to the … Scribe Patents…." (¶ 13, *supra*; *see also* Ex. C at 1; Ex. D at 1.)

34. Defendant's incorrect representations concerning the ownership of all rights to the Scribe Patents in the STS Notice Letter and ColDesi Notice Letter constitute bad faith assertions of patent infringement under Florida's Patent Troll Prevention Act, §§ 501.991 – 501.997, Florida Statutes ("FPTPA"). Specifically, the notice letters constitute bad faith assertions of patent infringement because "[t]he sender, or a person whom the sender represents, *lacks a current right to license the patent to, or enforce the patent against*, the target." *Id.* § 501.993(2)(b)(1).

35. The STS Notice Letter and ColDesi Notice Letter also constitute bad faith assertions of patent infringement under § 501.993(2)(c)(1) of the FPTPA because the letters do not include the address of the person asserting the infringement claim. (¶ 15, *supra*.)

36. Pursuant to § 501.995 of the FPTPA, Plaintiffs are entitled to assert the claim set forth in this Count III as a private right of action and may seek the following remedies for Defendant's violation of the FPTPA: equitable relief; actual damages; costs and fees, including reasonable attorney fees; and punitive damages in an amount not to exceed $75,000 if the court determines that Defendant's conduct constitutes repeated violations of the FPTPA.

## **PRAYER FOR JUDGMENT**

WHEREFORE, Plaintiffs respectfully request relief as follows:

A. That Defendant take nothing by way of its allegations of patent infringement against Plaintiffs;

B. That this case be deemed exceptional pursuant to 35 U.S.C. §285 and Plaintiffs be awarded their costs of suit incurred herein, including attorney fees and expenses;

C. Judgment that Plaintiffs do not infringe and have never infringed any claim of the 010 patent;

D. Judgment that Plaintiffs do not infringe and have never infringed any claim of the

699 patent;

E. Judgment that Defendant is liable to Plaintiffs for violating the FPTPA and that Plaintiffs be awarded all remedies to which they are entitled under the FPTPA; and

F. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Date: January 30, 2025

Respectfully submitted,

By: s/ Matthew Sean Tucker
Matthew Sean Tucker
Florida Bar No. 90047
Tucker Law ®
800 SE 3rd Avenue, Suite 300
Fort Lauderdale, FL 33316
Telephone: (954) 204-0444
Facsimile: (954) 358-4946
Matt@TuckerUp.com
Attorney for Plaintiffs

Matthew G. McAndrews
(*pro hac vice* application forthcoming)
mmcandrews@mcandrews-ip.com
Paul W. McAndrews
(*pro hac vice* application forthcoming)
pwmcandrews@mcandrews-ip.com
McAndrews, Held & Malloy, Ltd.
500 West Madison Street, 34th Floor
Chicago, IL 60661
Telephone: (312) 775-8115